UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------
MARC CAINE[1]

Plaintiff,

- against -

AMERICAN HONDA MOTOR CO. INC.,

Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
24-CV-8610 (PKC) (AYS)

PAMELA K. CHEN, United States District Judge:

Plaintiff Marc Caine ("Caine") has filed this action against Defendant American Honda Motor Co. Inc. ("Defendant" or "Honda") alleging various claims related to defective parts in his Honda Odyssey's "Infotainment" system. Before the Court are Defendant's motions for summary judgment, (Mot. Summ. J. ("MSJ"), Dkt. 149), and to strike Plaintiff's expert opinion, (Mot. Exclude Ops. & Test. Darren Manzari ("Mot. Excl."), Dkt. 150).[2] For the reasons explained below, the Court grants in part and denies as moot in part Defendant's motion to strike Plaintiff's expert opinion, and grants Defendant's motion for summary judgment because Plaintiff lacks standing.

---

[1] The Court notes that the docket in this matter identifies Alec Plotts and Leticia Rivera as Plaintiffs. However, their claims have been severed from this action. (Civil Mins. at 5, *Plotts, et al. v. American Honda Motor Co., Inc.*, 2:22-CV-4529 (RGK) (AS) (C.D. Cal. Nov. 27, 2024), Dkt. 117.) The Clerk of Court is therefore respectfully requested to amend the caption of this case to *Caine v. American Honda Motor Co. Inc.*

[2] "Where a decision on a motion to strike might affect a movant's ability to prevail on summary judgment, it is appropriate to consider the strike motion before the summary judgment motion." *Cmty. Care Companions, Inc. v. Interim Healthcare, Inc.*, No. 19-CV-4870 (PKC) (LGD), 2025 WL 929407, at *9 (E.D.N.Y. Mar. 27, 2025) (citation omitted). Accordingly, the Court considers Defendant's motion to strike Plaintiff's expert opinion alongside its motion for summary judgment.

## BACKGROUND

Unless otherwise noted, the following facts are drawn from the parties' statements of undisputed facts pursuant to Federal Rule of Civil Procedure 56 and Local Rule of Civil Procedure ("Local Rule") 56.1. (*See* Def.'s Statement Material Facts ("Def.'s 56.1"), Dkt. 149-2; Pl.'s Resp. Def.'s 56.1 & Statement Additional Material Facts ("Pl.'s Resp. 56.1"), Dkt. 164-1; Def.'s Reply Supp. Def.'s 56.1 & Resp. Pl.'s 56.1 ("Def.'s Reply. 56.1"), Dkt. 162.)[3]

### I. Statement of Facts

#### A. The Infotainment System Defect

The model year ("MY") 2020 Honda Passport, MYs 2020–2022 Honda Pilot, MYs 2021–2022 Honda Passport, and MYs 2020–2022 Honda Odyssey (collectively, the "Class Vehicles") are equipped with an "Infotainment" system that contains the car's main audio unit, amplifier, navigation system, and other components depending on the trim. (Pl.'s Resp. 56.1, Dkt. 164-1, ¶ 6.) The various components of the Infotainment system are connected through a Media Oriented

[3] The Court construes any disputed facts in the light most favorable to Plaintiff, as the non-moving party, for purposes of Defendant's summary judgment motion. *See Est. of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016) (citing *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)). Unless otherwise noted, a standalone citation to a party's Local Rule 56.1 statement indicates that the Court has deemed the underlying factual allegation undisputed. Any citation to a Local Rule 56.1 statement incorporates by reference the document(s) cited therein; where relevant, however, the Court may cite directly to an underlying document. However, where Plaintiff either (1) admits or (2) denies certain of the facts alleged in Defendant's Local Rule 56.1 statement, without citing to admissible evidence, the Court may deem such facts undisputed. *See* Loc. R. 56.1(c)–(d).

This case contains many sealed filings. To the extent the Court cites or quotes a document that is sealed, the Court has reviewed the document and determined that the cited or quoted section does not merit sealing. In an abundance of caution, however, this Memorandum & Order will be filed on a restricted basis to allow the parties fourteen (14) days to object to the publication of any portion of the Memorandum & Order that contains information that should remain restricted, i.e., redacted. If no such objections are timely filed, the Memorandum & Order will be made public in its entirety.

Systems Transport ("MOST") network that permits high-capacity data transmission, like voice and video. (*Id.* ¶ 7.) For example, in the Class Vehicles, the MOST network communicates images from the rear camera to the center console display. (*Id.*) The MOST network is configured in a ring shape, and various components on the "ring" are connected by coaxial cables (the "MOST Ring"). (*Id.* ¶ 8.)

In 2019, Honda received a report regarding MOST connectivity issues causing intermittent popping and crackling noises within a small subset of MY 2018 and MY 2019 Pilot, Passport, and Odyssey vehicles. (*Id.* ¶ 11.) From July 2020 to July 2021, Honda introduced improvements related to the MOST Ring in its manufacturing process for MY 2021 and MY 2022 vehicles. (*Id.* ¶ 15.) With respect to vehicles that were already on the market, such as the MY 2018 and 2019 Odyssey, on July 27, 2020, Honda issued a Technical Service Bulletin to address the popping noise from the speakers, which "was published to authorized Honda dealers, non-Honda repair shops, and to the public via the [National Highway Traffic Safety Administration ('NHTSA')] website." (*Id.* ¶¶ 16, 18.) As conveyed by the Bulletin, Honda introduced a new countermeasure for a portion of the Most Ring, providing for the "replace[ment] of the original housing connection, with a new sealed housing" to "correct[] any existing terminal deformation[.]" (*Id.* ¶ 17.)

In February and April 2022, Honda conducted additional investigations, which confirmed that its countermeasures had not resolved the issue in all vehicles. (*Id.* ¶¶ 20–22.) On June 15, 2023, Honda issued a recall, which included a free repair, under the auspices of the NHTSA for all cars affected by the Infotainment system defect (the "Recall"). (*Id.* ¶¶ 25–26.) The Recall involved replacing certain terminals entirely and repairing existing terminals by installing a "splicebox." (*Id.* ¶ 26.)

As of August 2025, Recall repairs had been completed for 81.6% of MY 2018–2023 Odyssey vehicles, (*id.* ¶ 27), and among those vehicles that received repairs, the Recall repair was approximately 99.46% effective in fixing the audio crackling and popping issue on the first attempt,[4] (*id.* ¶ 28). With respect to the 2022 Odyssey specifically, only 0.88% of owners reported any issues related to their Infotainment system after receiving the Recall repair. (*Id.* ¶ 29.)[5] And only 0.2% of owners—approximately one fourth of those who reported post-repair issues—continued to report issues after making a single follow-up visit. (*Id.*)

**B. Plaintiff's 2022 Honda Odyssey**

On July 5, 2021, Plaintiff purchased a 2022 Honda Odyssey ("Plaintiff's Odyssey") from Millenium Honda, an independent, third-party Honda dealership in Hempstead, New York for $60,799.40. (*Id.* ¶ 30.) He claims that within two months of purchasing the Odyssey he began to hear "static noise and popping" when using Bluetooth to talk on a mobile phone while driving and once while listening to music. (*Id.* ¶¶ 32–33.) On September 13, 2021, Plaintiff brought his Odyssey to Millenium Honda where the dealership found that the car's MOST connectors were damaged and replaced the connectors free of charge. (*Id.* ¶ 35.) On October 26, 2021, Caine brought his car back to Millenium Honda. (*Id.* ¶ 36.) The dealership found a defective armrest,

[4] Plaintiff disputes this fact to the extent that "[t]he referenced figure does not measure effectiveness; it tracks the number of vehicles with additional repairs after the recall is performed." (Pl.'s Resp. 56.1, Dkt. 164-1, ¶ 28.) However, the testimony Plaintiff cites explains that, in the ordinary course, Honda measures "recall efficacy" based on customers seeking further repairs after an initial attempt. (Def.'s Reply 56.1, Dkt. 162, ¶ 28; Decl. Michael B. Shortnacy, Ex. 1, Dkt. 160-1, at 277:9–78:19.) Plaintiff fails to explain why this is not an adequate measure of the recall's efficacy or provide evidence that undermines the adequacy or reliability of this measure.

[5] Plaintiff argues that "[this] figure refers to the number of documented complaints made after the recall is performed; it does not include, *inter alia*, owners who complained to Honda dealers after the recall repair was performed and were told there are no additional repairs available and/or those whose complaints were not documented." (Pl.'s Resp. 56.1, Dkt. 164-1, ¶ 29.) Plaintiff, however, offers no evidence of such occurrences.

and ordered a replacement part, free of charge. (*Id.*) According to Plaintiff's testimony, he also complained of "popping and crackling noises" from the car's Infotainment system at that time. (Decl. Michael B. Shortnacy ("Shortnacy Decl."), Ex. 12, Dkt. 149-20, at 201:10–02:7 (deposition of Plaintiff).) The next month, Plaintiff visited the dealership once again, and the dealership replaced the center front speaker and microphone free of charge. (Pl.'s Resp., Dkt. 164-1, ¶ 37.)

On or about June 29, 2023, Caine brought his car to the dealership to have the Recall repair performed at no cost. (*Id.* ¶ 38.) According to Plaintiff, since October 2024, even after receiving the Recall repair, his car still experiences "audio symptoms," though the sounds are a "bit quieter" and both "noticeably" and "notably" less frequent since the Recall repair. (*Id.* ¶ 39.) Plaintiff does not know the underlying mechanical reasons causing these ongoing audio issues. (*Id.* ¶ 41.)

After receiving the Recall repair, Caine brought his car to Millenium Honda on at least five separate occasions. (*Id.* ¶¶ 42–46.) On none of these occasions did Caine report that his car was experiencing audio symptoms related to the Infotainment system. (*Id.*) As of October 31, 2024, Caine had not taken his Odyssey to any other dealership or repair shop. (*Id.* ¶ 47.)

## II. Procedural History

On July 1, 2022, three named plaintiffs—Caine, Alec Plotts, and Leticia Rivera (collectively, the "C.D. Cal. Plaintiffs")—commenced a putative class action in the U.S. District Court for the Central District of California ("C.D. Cal."). (Compl., Dkt. 1.)[6] Defendant moved to dismiss the action on September 26, 2022. (Dkt. 16.) In response, the C.D. Cal. Plaintiffs filed an amended complaint. (Am. Compl., Dkt. 20.) Defendant moved to dismiss a second time on November 21, 2022. (Dkt. 31; *see also* Pl.'s Opp'n Mot. Dismiss, Dkt. 35; Def.'s Reply Mot.

[6] Caine and Rivera first appeared as Plaintiffs when filing the Amended Complaint on October 17, 2022. (*See* Am. Compl., Dkt. 20.)

Dismiss, Dkt. 36.) On June 22, 2023, the C.D. Cal. district court granted in part and denied in part the motion to dismiss. (*See* Mem. & Op. Mot. Dismiss, Dkt. 48.)[7]

On October 22, 2024, the C.D. Cal. Plaintiffs moved to certify a class. (Dkt. 86; *see also* Def.'s Opp'n Mot. Certify Class, Dkt. 95; Pl.'s Reply Certify Class, Dkt. 107.) On November 27, 2024, the C.D. Cal. court denied the motion to certify a class and instead, *sua sponte*, found it appropriate to sever the C.D. Cal. Plaintiffs' claims and transfer each to their "home states." (Civil Mins. at 5, *Plotts, et al. v. American Honda Motor Co., Inc.*, 2:22-CV-4529 (RGK) (AS) (C.D. Cal. Nov. 27, 2024), Dkt. 117; Civil Mins. at 6, *Plotts*, 2:22-CV-4529, Dkt. 120.) Accordingly, Plotts' claims were transferred to the District of Minnesota, (Civil Mins. at 6, *Plotts*, 2:22-CV-4529, Dkt. 117), Rivera's claims were transferred to the Northern District of Illinois, (Civil Mins., *Plotts*, 2:22-CV-4529, Dkt. 120), and Caine's claims were transferred to this District, (*id.*). Before the Court are Caine's unjust enrichment, breach of warranty, fraudulent concealment, and General Business Law § 349 claims. (*See* Civil Mins., *Plotts*, 2:22-CV-4529, Dkt. 117.)

After Plaintiff Caine's claims were transferred to this District, the parties completed discovery. On August 25, 2025, the Court held a pre-motion conference and granted Defendant leave to file a motion for summary judgment and to strike the testimony of Plaintiff's expert Darren Manzari. (08/25/2025 Min. Entry.) On November 26, 2025, Defendant filed its motion for summary judgment as to all of Plaintiff's claims, and a motion to strike the opinions and testimony of Plaintiff's expert, Darren Manzari. (MSJ, Dkt. 149; Mot. Excl., Dkt. 150.)

[7] The C.D. Cal. court dismissed the C.D. Cal. Plaintiffs' Magnuson-Moss Warranty Act claims, (Mem. & Op. Mot. Dismiss, Dkt. 48, at 8), the Illinois common law fraud claims, (*id.* at 10), and the Illinois breach of implied warranty claims, (*id.* at 24), but permitted the other claims to proceed.

## LEGAL STANDARDS

### I. Summary Judgment

Summary judgment is proper only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute between the parties will not defeat a motion for summary judgment. *See Wang v. Hearst Corp.*, 877 F.3d 69, 76 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Rather, a genuine issue of material fact exists "where the evidence is such that a reasonable jury could decide in the nonmovant's favor." *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74 (2d Cir. 2016) (citation omitted). The Court resolves all factual ambiguities and draws all permissible inferences in favor of the nonmoving party—here, Plaintiff. *See Est. of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016) (citing *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

"The party moving for summary judgment is initially responsible for demonstrating the absence of a genuine issue of material fact." *Holcomb*, 521 F.3d at 137 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). When the defendant is the moving party, there is "no express or implied requirement" that the defendant "negat[e] [the plaintiff's] claim" with evidence of its own, *Celotex*, 477 U.S. at 323 (emphasis omitted), as long as it "point[s] out to the district court . . . that there is an absence of evidence to support [the plaintiff's] case," *id.* at 325. Once a defendant has met this burden, the plaintiff must "go beyond the pleadings" to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted); *see also D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) (explaining that a "non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" to defeat summary judgment (collecting cases)).

"Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014) (citation omitted). "Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of the claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment." *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) (citing *Celotex Corp.*, 477 U.S. at 322–23; *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)).

## II. Federal Rule of Evidence 702

"Trial courts serve as 'gatekeep[ers],' responsible for 'ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Athena Art Fin. Corp. v. Certain Artwork by Jean-Michel Basquiat Entitled Humidity, 1982*, No. 20-CV-4669 (GBD) (VF), 2024 WL 1116083, at *2 (S.D.N.Y. Mar. 14, 2024) (first quoting *Daubert v. Merrell Dow Pharms.*, Inc., 509 U.S. 597 (1993); and then citing *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 48 (2d Cir. 2004)). Thus, "[w]hen examining the admissibility of expert testimony, the Court . . . must determine, within its sound discretion, whether the 'proponent of expert testimony' has met the 'burden of establishing by a preponderance of the evidence' that the expert's testimony satisfies the admissibility standard under [Federal Rule of Evidence] 702." *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 341 (E.D.N.Y. 2016) (quoting *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007)). Moreover, "the court's gatekeeping role demands that it exclude expert testimony 'if it speculative or conjectural,' 'without factual basis,' or 'purely conclusory.'" *Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC*, 419 F. Supp. 3d 490, 512 (E.D.N.Y. 2019) (citations omitted).

"The admissibility of expert testimony in the federal courts is governed principally by Rule 702 of the Federal Rules of Evidence." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005). Federal Rule of Evidence 702 ("Rule 702") permits expert testimony where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "This is a necessarily 'flexible' inquiry." *Cmty. Care Companions, Inc. v. Interim Healthcare, Inc.*, No. 19-CV-4870 (PKC) (LGD), 2025 WL 929407, at *9 (E.D.N.Y. Mar. 27, 2025) (quoting *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 658 (2d Cir. 2016)). "Important to this inquiry is that a district court 'focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions.'" *Id.* (citation omitted).

**DISCUSSION**

The Court first addresses Defendant's motion to exclude Darren Manzari's expert opinions and testimony because whether there is a material factual dispute in this case depends largely on the extent to which his testimony is admissible. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) (noting that courts may only rely on admissible evidence in deciding summary judgment motions); *Gjini v. United States*, No. 16-CV-3707 (KMK), 2019 WL 498350, at *13 (S.D.N.Y. Feb. 8, 2019) ("If a proffer of expert testimony is excluded as inadmissible pursuant to [Rule] 702, the court must make the summary judgment determination on a record that does not include that evidence." (alteration in original) (citation omitted)).

## I. Darren Manzari's Opinion that the Recall Repair Was Ineffective Must Be Excluded

Defendant moves to strike Darren Manzari's ("Manzari") expert opinions pursuant to Rule 702. (Mot. Excl., Dkt. 150; *see* Shortnacy Decl. Ex. 9 ("Manzari Report"), Dkt. 160-7.) Plaintiff appears to intend to rely on Manzari as an expert as to the MOST communication system, "automotive defects," and "the analysis and diagnosis of customer complaints and vehicle performance." (Manzari Report, Dkt. 160-7, ¶¶ 14–15.) Defendant challenges Manzari's expert opinion that, *inter alia*, Defendant did not provide an effective repair to Plaintiff's Odyssey via the Recall.[8] (*See* Def.'s Mem. Supp. Mot. Excl. ("Def.'s Mem. Mot. Excl."), Dkt 150-1, at 16–19.) Manzari's same expert opinion was also challenged in the case of one of the original C.D. Cal. Plaintiffs, Alec Plotts ("Plaintiff Plotts"), after his case was transferred to the District of Minnesota, and the court there found Manzari's expert opinion inadmissible. *See Plotts v. Am. Honda Motor Co.*, No. 24-CV-4351 (NEB), 2026 WL 880413, at *4 (D. Minn. Mar. 31, 2026). For the reasons discussed below, the Court agrees with Defendant and the court in *Plotts*, and finds that, even assuming *arguendo* that Manzari is qualified as an expert in automotive defects and the MOST communication system, his opinion regarding the efficacy of the Recall repair on the Class Vehicles, including Plaintiff's Odyssey, is neither "based on sufficient facts or data" nor "the product of reliable principles and methods," *see* Fed. R. Evid. 702 (b), (c), and must be excluded.

Manzari opines that the Recall repair was ineffective as to the Class Vehicles, including Plaintiff's Odyssey, based on the following grounds: (1) "Plaintiffs Caine and Plotts both note they had the recall performed but their vehicles continue to produce loud and unexpected static and

---

[8] The Court does not address Defendant's arguments for excluding Manzari's opinions as to other issues since the exclusion of Manzari's opinion regarding the efficacy of the Recall repair is sufficient to grant Defendant's motion for summary judgment. *See infra*.

popping noises, although not as severely as before the recall," and four other owners of Class Vehicles "have made similar complaints" to the NHTSA (the "NHTSA Complainants"), (Manzari Report, Dkt. 160-7, ¶ 66); and (2) "the [R]ecall repair [did] not involve replacing or repairing all the defectively manufactured female Tyco connectors and thus [did] not eliminate all defective MOST components," (*id.* ¶ 65).[9] As explained below, neither of these grounds demonstrates that Manzari's opinion is "based on sufficient facts or data" or "the product of reliable principles and methods." *See* Fed. R. Evid. 702 (b), (c).

### A. Complaints of Class Vehicle Owners

Manzari's reliance on the alleged reports of Plaintiff Caine, Plaintiff Plotts,[10] and four NHTSA Complainants about continuing defects after Recall repairs, without any attempt to corroborate those claims, is an insufficient ground for an expert opinion. In his deposition, Manzari explained that, in diagnosing the audio symptoms at issue in this case, he would need to closely inspect the car and the MOST Ring, and "interrogate" the vehicle's owner. (*See* Shortnacy Decl. Ex. 7 ("Manzari Dep."), Dkt. 160-6, at 262:14–63:18.) Indeed, Manzari noted, "if you were a customer and came to me and said my audio is popping and crackling, what you define as popping and crackling and what I hear as popping and crackling are very often two different things . . . so I wouldn't just take the customer's word and [would] go check the MOST Ring."

---

[9] To the extent Manzari's opinion as to the effectiveness of the Recall repair was also based on a third ground, his contention that "Honda took too long to repair the Class Vehicles and it has not provided a repair within what [he] believe[s] is a reasonable period of time," (Manzari Report, Dkt. 160-7, ¶ 67), the Court does not address it as it is plainly irrelevant to whether the Recall repair was effective in restoring the operational ability of the Class Vehicles, which is what is relevant here.

[10] Manzari does not explain the source of Plaintiffs Caine's and Plotts's reports, e.g., whether they are from their depositions or something else. Notably, as discussed *infra*, Manzari has never spoken to Caine. (Pl.'s Resp. 56.1, Dkt. 164-1, ¶ 67.) And there is nothing in the record indicating that Manzari ever spoke to Plotts.

(*Id.* at 256:3–14.) Yet, in this case, Manzari *never* spoke to Plaintiff *nor* inspected Plaintiff's car. (*See* Pl.'s Resp. 56.1, Dkt. 164-1, ¶ 48.) Instead of following what he concedes is an appropriate methodology of investigation, Manzari blindly relies on the accounts of Plaintiff and five other Class Vehicle owners and concludes that "[t]he evidence I have reviewed to date suggests that the recall may not [have] adequately repair[ed] the defect." (Manzari Report, Dkt. 160-7, ¶ 66.) This "methodology"—which deviates from Manzari's own prescribed methodology—is plainly inadequate. *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 268 (2d Cir. 2002) (affirming district court's exclusion of expert's opinion under Rule 702 where expert "failed to apply his own methodology reliably"). The "analytical gap between the data"—four anonymous comments on the NHTSA website and claims by the two plaintiffs—"and the opinion proffered"—that the Recall repair was ineffective—"is simply too great." *Zsa Zsa Jewels, Inc.*, 419 F. Supp. 3d at 512 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

**B. The Parts Repaired and Replaced**

The other purported basis of Manzari's opinion that the Recall repair was ineffective is that "the [R]ecall repair [did] not involve replacing or repairing all the defectively manufactured female Tyco connectors and thus [did] not eliminate all defective MOST components," (Manzari Report, Dkt. 160-7, ¶ 65). But Manzari never affirmatively or explicitly makes that connection or renders that opinion. Manzari does not claim or explain that "replacing or repairing all the defectively manufactured female Tyco connectors" was necessary or that this was the only measure that would have been effective. Furthermore, by focusing solely on the course of action Honda did *not* take, Manzari utterly fails to address whether the countermeasure Honda *did* implement via the Recall *was* effective. Rather than replacing the connectors, Honda used a splicebox to repair defective connectors. (Pl.'s Resp. 56.1, Dkt. 164-1, ¶ 26.) The record suggests that Manzari never considered the effectiveness of Honda's method, as he neither tested nor even saw the splicebox

Honda installed. (*See id.* ¶ 50.) Manzari's opinion that because Honda did not replace all pre-existing connectors, the Recall was *per se* ineffective, (*see* Manzari Report, Dkt. 160-7, ¶ 65), is therefore conclusory and does not satisfy Rule 702, *see Nimely*, 414 F.3d at 396 ("'[N]othing in . . . the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.'" (first alteration in original) (quoting *Gen. Elec.*, 522 U.S. at 146)).

Accordingly, the Court cannot find that Manzari's testimony is "based on sufficient facts or data" or is "the product of reliable principles and methods." *See* Fed. R. Evid. 702 (b), (c). The Court therefore excludes Manzari's opinion and does not consider it in ruling on Defendant's summary judgment motion.

## II. Plaintiff Cannot Establish that He Suffered Injury

Defendant seeks summary judgment on the grounds that, *inter alia*, Plaintiff cannot establish an injury in fact and thus lacks standing. (*See* Def.'s Mem. Supp. SJ ("Def.'s Mem. SJ"), Dkt. 149-1, at 10–16.)[11] As it must address jurisdictional concerns first, the Court begins with Defendant's contention that Plaintiff lacks standing. *See Tarsio v. FCA US LLC*, No. 22-CV-9993 (NSR), 2024 WL 1514211, at *3 (S.D.N.Y. Apr. 8, 2024) (citing *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 44 (2d Cir. 2015); *O'Neill v. Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 522 (S.D.N.Y. 2018)). "To avoid summary judgment, the plaintiff[] (nonmovant[]) bear[s] the 'burden of establishing that [he] ha[s] standing.'" *Veloz. v. MM Custom House Inc.*, No. 19-CV-0852 (DLI) (JRC), 2024 WL 1282698, at *5 (E.D.N.Y. Mar. 26, 2024) (quoting *CILP*

[11] Since the Court ultimately concludes that Plaintiff lacks standing and Defendant is entitled to summary judgment as to all of Plaintiff's claims on that ground, it does not address Defendant's arguments for summary judgment as to each of Plaintiff's claims. (*See* Def.'s Mem. SJ, Dkt. 149-1, at 16–25 (advancing merits arguments in support of summary judgment as to Plaintiff's fraud, unjust enrichment, and express warranty claims).)

*Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013)). To establish standing, a plaintiff must show (1) that he suffered an injury in fact, (2) the injury is fairly traceable to the defendant's conduct, and (3) a decision in plaintiff's favor is likely to redress the alleged harm. *See Tarsio*, 2024 WL 1514211, at *2 (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at *3 (first quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), and then citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

"The elements of standing are an 'indispensable' part of the plaintiff's case, 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *Diaz v. Loc. No. 241, Transp. Workers Union of Am., Univ. Div.*, No. 17-CV-8898 (WHP), 2021 WL 1063184, at *5 (S.D.N.Y. Mar. 19, 2021) (quoting *Lujan*, 504 U.S. at 561). "Because this case is at the summary judgment stage, the merits of the standing issue must be subjected to the same standards as any other issue at summary judgment." *Id.*

Here, Defendant argues that Plaintiff lacks standing because he was offered an NHTSA-backed recall that provided him with a free and effective repair. (*See* Def.'s Mem. SJ, Dkt. 149-1, at 10–16.) Defendant contends that, because the Recall entirely redressed the defects in Plaintiff's Odyssey, Plaintiff cannot allege an injury in fact. (*Id.*) Meanwhile, Plaintiff argues that the Recall repair did not provide him complete redress for two reasons: (1) the Recall repair was ineffective, (Pl.'s Mem. Opp'n SJ, Dkt. 164, at 3–10), and (2) the Recall repair did not compensate him for the diminished value of the car at the time of sale, (*id.* at 10–12).

**A. The Recall Repair Was Effective**

While Plaintiff argues that the Recall repair was ineffective and that he therefore suffered a cognizable injury, Plaintiff fails to create a genuine issue of material fact on this question. "Before a district court can draw all ambiguities and inferences in favor of the non-moving party, . . . that party is still required to 'offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Windward Bora LLC v. Browne*, 110 F.4th 120, 131 n.13 (2d Cir. 2024) (quoting *D'Amico*, 132 F.3d at 149).

With Manzari's expert opinion excluded, Plaintiff relies entirely on his own testimony to support his claim that the defect persisted after the Recall repair on his Odyssey. (*See* Pl.'s Resp., Dkt. 164-1, ¶ 39 (Plaintiff claiming that the issues persist).) This is not enough in the face of Defendant's evidence that the Recall repair was effective as to more than 99% of those that received it. A non-moving party's "self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." *Adler v. Penn Credit Corp.*, No. 19-CV-7084 (KMK), 2022 WL 744031, at *9 (S.D.N.Y. Mar. 11, 2022) (finding that plaintiff lacked standing where harm was evidenced only by plaintiff's testimony). Here, no direct or circumstantial evidence supports Plaintiff's self-serving testimony, and, in fact, Plaintiff's other testimony only contradicts his self-serving statements. Even while claiming the noises persist, Plaintiff concedes that the sounds are a "bit quieter" and "noticeably" less frequent since the Recall repair, so much so that Plaintiff declined to try to estimate the frequency. (*See* Shortnacy Decl. Ex. 12, Dkt. 149-20, at 178:19–23, 184:6–20 (deposition of Plaintiff).) Moreover, Plaintiff's claim that any audio issue persists is belied by his own actions: after receiving the Recall repair, Plaintiff brought his car to Millenium Honda on at least five separate occasions without ever reporting that his car was experiencing any audio issues. (*See* Pl.'s Resp. 56.1, Dkt. 164-1, ¶¶ 42–46); *see, e.g.*, *Mayes v. Village of Hoosick Falls*, 162 F. Supp. 3d 67, 93–94 (N.D.N.Y.

2016) (granting summary judgment after concluding that "no reasonable factfinder could conclude" that defendants handcuffing plaintiff was the cause of plaintiff's hand injuries where the only evidence was plaintiff's self-diagnosis of the cause and plaintiff had visited doctors after the handcuffing but never mentioned any injury to his hand). Because Plaintiff does not present any evidence that the Recall repair was ineffective with respect to his Odyssey or otherwise, he fails to show that he suffered an injury in fact. *See Tarsio*, 2024 WL 1514211, at *4 (noting that it is "unclear how [p]laintiff can demonstrate injury" since "he has failed to adequately allege that the purported [d]efect remain[ed] after the recall remedy ha[d] been completed." (citation omitted)).

### B. Plaintiff's "Benefit-of-the-Bargain" Theory Fails to Establish Injury Where Defendant Provided an Effective Recall Repair

Plaintiff argues that regardless of whether the Recall repair ultimately remedied the issues with his vehicle, had he known about the defect and the resulting audio symptoms, he would not have purchased the car, or he would have demanded a "significant discount" off the purchase price. (Pl.'s Mem. Opp'n SJ, Dkt. 164, at 3–4.) In other words, Plaintiff advances a "benefit-of-the bargain" theory of injury, in that he seeks damages for the diminished value of his car at the time of sale as measured by the cost of repair.[12] (*Id.*) But this theory of injury fails here given that Defendant is entitled to summary judgment on the question of whether the Recall repair was effective.

---

[12] *See In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 3920353, at *7 (S.D.N.Y. July 15, 2016) ("The gravamen of the benefit-of-the-bargain defect theory is that Plaintiffs who purchased defective cars were injured when they purchased for *x* dollars a . . . car that contained a latent defect; had they known about the defect, they would have paid fewer than *x* dollars for the car (or not bought the car at all), because a car with a [] defect is worth less than a car without a [] defect.").

Courts in this Circuit have recognized that "[a] plaintiff who alleges that a deceptive practice caused him to pay more than the good or service he actually received was worth may be able to satisfy the injury requirement." *Tarsio* 2024 WL 1514211, at *4 (quoting *Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450, 453 (E.D.N.Y. 2012)). "But if the defendant provides an adequate remedy for the problem, the plaintiff has not suffered an injury." *Id.* (citation omitted). Indeed, courts across the country "have repeatedly found that the issuance of a recall and repair deprives a party of an injury in fact based on any defect(s) remedied by the recall and repair." *Id.* (citing *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 376 (6th Cir. 2015); *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1211 (10th Cir. 2012); *Sharp v. FCA US LLC*, 637 F. Supp. 3d 454, 468–69 (E.D. Mich. 2022); *Sugasawara v. Ford Motor Co.*, No. 18-CV-6159 (LHK), 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019); *Cheng v. BMW of N. Am., LLC*, No. 12-CV-9262 (GAF), 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013)).

In other cases arising out of a vehicle defect where defendant offered a repair, courts in this Circuit have likewise found that "[a]s a matter of common sense . . . the economic loss injury based on the [v]ehicles' decreased value no longer exists if [d]efendant has, through the NHTSA-backed recall, offered to remove the complained-of [d]efect free of charge." *Id.* (citation omitted) (holding that plaintiff, who had a bought a car with a faulty backup camera, "failed to sufficiently allege an injury due to overpaying for the [v]ehicle" where defendant had offered an "NHTSA-approved recall and repair"); *see also Kommer v. Ford Motor Co.*, No. 17-CV-296 (LEK), 2017 WL 3251598, at *5 (N.D.N.Y. July 28, 2017) (finding that "if the [car] defect can be repaired for free as part of the warranty," plaintiff "ha[d] a perfectly adequate remedy available to him, and that defeat[ed] his price-premium theory of injury").

There is no "bright line rule regarding the legal effect of a recall" and in limited circumstances a recall might not deprive a plaintiff of standing. *Maadanian v. Mercedes-Benz USA, LLC*, No. 22-CV-0665 (RSL), 2024 WL 1579658, at *3 (W.D. Wash. Apr. 11, 2024). One such situation is where the recall was ineffective. *See, e.g.*, *Shaaya v. Jaguar Land Rover N. Am. LLC*, No. 2:20-CV-5679, 2022 WL 2341599, at *5 (D.N.J. June 29, 2022) ("Defendant argues that [plaintiff] does not have standing because he has not paid for any repairs, since [defendant] replaced his diesel fluid tank and fluid injector, and induced regeneration free of charge. However, as these repairs were allegedly ineffective, the fact that they were done for free does not preclude standing."); *Peckerar v. Gen. Motors, LLC*, No. 18-CV-2153 (DMG), 2020 WL 6115083, at *2 (C.D. Cal. Aug. 17, 2020) ("Plaintiffs assert that the [r]ecall has not in fact remedied the [a]lleged [d]efect, and that their vehicle 'remains defective' even after undergoing the recommended repair. . . . If the [r]ecall repair has not fixed the defect, it did not restore [p]laintiffs' vehicle to its pre-defect value."). But, as discussed above, Plaintiff has not offered sufficient evidence that his vehicle continued to suffer from the defect after the Recall repair, so those cases involving ineffective recall repairs are distinguishable.

Recalls have also not negated a "benefit-of-the-bargain" theory of injury where a recall and refund were promised but not provided. *See, e.g.*, *O'Neill*, 346 F. Supp. 3d at 522–23 (declining to dismiss claims on prudential mootness grounds due to the speculative nature of the recall and refund promise, and in recognition of plaintiffs' option to refuse the offer and pursue legal claims). But those cases are equally distinguishable since Plaintiff received the Recall repair.

Plaintiff's cited cases do not undermine the conclusion that the "benefit-of-the-bargain" theory cannot establish injury here. (*See* Pl.'s Mem. Opp'n SJ, Dkt. 164, at 6–7 & n.6 (collecting cases).) Each is distinguishable, because the decision came at the motion-to-dismiss stage where

it was inappropriate to consider evidence of the effectiveness of a recall and repair, because there were allegations that the recall was not fully effective, or because there were theories of injury beyond the "benefit-of-the-bargain" which the recall did not remedy even if successful in addressing the defect. *See Bermudez v. Home Design Inc.*, No. 5:24-CV-2376 (SSS), 2025 WL 1802585, at *2 (C.D. Cal. June 23, 2025) (declining to dismiss claims at motion-to-dismiss stage for lack of standing where defendant's recall provided a do-it-yourself "repair kit" that never arrived and plaintiff's allegations adequately called into question the "efficacy" of defendant's recall); *Hickman v. Subaru of Am., Inc.*, No. 21-CV-2100 (NLH) (AMD), 2022 WL 11021043, at *5 & n.4 (D.N.J. Oct. 19, 2022) (declining to dismiss claims at motion-to-dismiss stage under prudential mootness doctrine because plaintiffs had not yet received the repairs and whether the recall repairs would negate standing was a question that had to be decided on a developed evidentiary record); *Davis v. BMW of N. Am., LLC*, No. 19-CV-19650, 2022 WL 3646571, at *3 (D.N.J. Aug. 23, 2022) (declining to dismiss claims at motion-to-dismiss stage under prudential mootness doctrine due to, among other things, plaintiff seeking "reimbursement for out-of-pocket expenses including smoke damage in his garage" which would not be remedied by the forthcoming vehicle recall); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 3920353, at *40 (S.D.N.Y. July 15, 2016) (declining to dismiss claims at motion-to-dismiss stage under prudential mootness doctrine because plaintiffs were seeking damages as to repaired cars in so far as they are "worth less than cars sold without the undisclosed defects"); *Peckerar*, 2020 WL 6115083, at *3 (declining to dismiss claims for lack of standing at motion-to-dismiss stage since plaintiffs "provide[d] facts to support their allegation that the [r]ecall d[id] not fix the [a]lleged [d]effect"); *Philips v. Ford Motor Co.*, No. 14-CV-2989-LHK, 2016 WL 693283, at *7 (N.D. Cal. Feb. 22, 2016) (declining to dismiss claims at motion-to-dismiss stage under prudential mootness

doctrine because plaintiffs sought damages for post-repair losses in market value which were not covered by the recall); *Sater v. Chrysler Grp. LLC*, No. 14-CV-0700 (VAP), 2014 WL 11412674, at *4 (C.D. Cal. Oct. 7, 2014) (declining to dismiss for lack of standing at motion-to-dismiss stage since plaintiffs alleged diminished value due to damage to wear and tear to other parts of their vehicles caused by defect that would not be remedied by a recall and repair to the defective part); *Lindstrom v. Polaris Inc.*, No. 23-CV-0137 (BLG) (SPW), 2024 WL 4275619, at *2 (D. Mont. Sep. 24, 2024) (declining to dismiss claims under prudential mootness doctrine despite initiation of recall since plaintiff sought damages for diminution of value, which would not be provided for by the recall).[13] Plaintiff cites no authority, and the Court is aware of none, finding at summary judgment that the evidence shows a plaintiff has received a repair such that there is no continuing defect, but concluding nonetheless that the plaintiff continues to have standing through the "benefit-of-the-bargain" theory of injury.

Indeed, the court in *Plotts* addressed essentially the same standing issue, and concluded that Plaintiff Plotts, who sued over the same defect as Plaintiff Caine and received the same Recall repair, had no standing to bring his benefit-of-the bargain claim. *See Plotts*, 2026 WL 880413.[14]

---

[13] Plaintiff cites one other case, *Leon v. Continental AG*, 301 F. Supp. 3d 1203, 1217–22 (S.D. Fla. 2017), where the court declined to dismiss benefit-of the bargain claims at the motion-to-dismiss stage. (*See* Pl.'s Mem. Opp'n SJ, Dkt. 164, at 7 n.6.) As with the other above-cited cases, the procedural difference makes the case distinguishable. Furthermore, to the extent *Leon*'s holding could be read as permitting the "benefit-of-the-bargain" injury theory to establish standing at a later stage, the Court finds it unpersuasive.

[14] The third C.D. Cal. Plaintiff is Rivera, whose claims were transferred to the Northern District of Illinois. Although the court denied dismissal in that case where Honda argued a lack of standing at the motion-to-dismiss stage, calling it a "close call," *Rivera v. Am. Honda Motor Co.*, No. 24 CV 12883, 2025 WL 1309536, at *4 (N.D. Ill. May 5, 2025), the court later granted Honda's summary judgment motion on the merits, finding, *inter alia*, that the plaintiff's claim for deceptive business practices under the Illinois Consumer Fraud Act failed "given that she received free repairs and an insurance payout for her 2020 Honda Pilot's actual cash value" and that, as a

There, while the court "[did] not conclude that a plaintiff who receives an effective recall repair *never* has an Article III injury-in-fact," it nonetheless found that the plaintiff had "offer[ed] no evidence of injury beyond what [was] already remedied by the [R]ecall repair" and "[t]hus, there is no injury" and Honda was entitled to summary judgment. *Id.* at *8 (emphasis added). So too here. Plaintiff Caine has failed to show that there exists a genuine dispute as to whether the Recall repair was effective, and has not presented any evidence of an injury that was not remedied by the Recall repair.

Plaintiff argues that this case is distinguishable from *Plotts* because, there, the court relied on the Eighth Circuit's "manifest defect rule." (Pl.'s Resp. Letter Regarding Infotainment Defect Cases, Dkt. 170, at 2–3 (citing *Plotts*, 2026 WL 880413, at *6).) That distinction, however, is immaterial as to the issue of whether recall negates injury and thus standing. The "manifest defect rule" requires that, for a plaintiff to establish standing, they must show that the purported defect manifested in that plaintiff's version of the product, not just in some of the products sold. Conversely, "[i]f a consumer's product 'has not exhibited the alleged defect, they have necessarily received the benefit of their bargain' because the product 'performs just as it was intended, and thus there is no injury.'" *Plotts*, 2026 WL 880413, at *6 (quoting *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 504–05 (8th Cir. 2009)). But that is an additional requirement placed on *plaintiff* to establish standing, and not one in dispute here or in *Plotts*. The court in *Plotts* went on to explain that, *even if the defect has manifested*, "but has been effectively repaired, and a plaintiff seeks only overpayment at the time of sale, then the plaintiff does not have an Article III injury." *Id.* In other words, despite the Eighth Circuit's requirement that a defect have manifested in the plaintiff's

---

result, the plaintiff "ha[d] not suffered actual pecuniary loss," Mem. Op. & Order, at 4–5, *Rivera v. Am. Honda Motor Co.*, No. 24-CV-12883 (LCJ) (N.D. Ill. Mar. 30, 2026), Dkt. 186.

product to establish standing, the principle that an effective recall might eliminate injury was still the dispositive legal principle in that case.

In sum, there is no genuine dispute of fact that Honda's 2023 Recall was effective and repaired the at-issue defect generally and in Plaintiff's car, thus restoring the benefit that Plaintiff had expected in his initial purchase, thereby redressing his claims entirely and eliminating any injury he might have suffered. Thus, the Court finds that Plaintiff has no injury and lacks standing, and Defendant is accordingly entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies as moot in part Defendant's motion to strike Plaintiff's expert Darren Manzari's opinion on the effectiveness of Defendant's 2023 Recall, and grants Defendant's motion for summary judgment because Plaintiff lacks standing.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 29, 2026
Brooklyn, New York